BAIRD BROS. VS WALTER PRATT & CO.

Opinion delivered October 27, 1905.

(89 S. W. Rep. 648).

1. *Sales—Contract—Parties.*

> Where the sellers of merchandise maintain two places of business,
> their office in one city and factory in another, the fact that goods
> were shipped from the factory instead of from the office will not
> justify the purchaser in refusing to receive the goods in compliance
> with the contract.

2. *Contract—Delivery of Goods—to Railway.*

> Where the contract specified that delivery was to be made to the
> Chicago, Rock Island & Pacific Railway and that road runs through
> both cities where defendant maintains places of business. *Held;*
> A delivery to such road at either place was a sufficient compliance
> with the contract.

3. *Contract—Order—Executory Contract.*

> Where an order for merchandise is signed by both parties it becomes
> a binding contract between the parties and title to the goods vested
> in the buyer at the time the goods are delivered as stipulated, and
> the "order" constitutes an executory contract and a mere offer
> sale.

4.  *Contract—Title.*

Where an executory contract for the sale of merchandise provides for the delivery of the goods at a certain time and place, title does not pass to purchaser until the terms of such executory contract have been fully complied with.

5.  *Contract—Variance—Unintentional Mistake.*

Where the seller in billing out goods to buyer makes an unintentional mistake as to the terms of the payments, and upon seller's attention being called thereto, and seller immediately rectifying such mistake to conform with the contract; *Held;* Purchaser not justified in refusing to carry out the contract.

6.  *Sale by Sample—Warranty—Waiver.*

Where a contract for the sale of merchandise provides that all goods were warranted to be the same in quality, material and all other respects, as samples shown by salesman, and on arrival purchasers shall examine all goods and give an itemized written notice of such defects, or all warranty of said goods shall be waived, and purchaser fails to make such examination; *Held;* Purchaser has waived such warranty and is not justified in refusing to pay for such goods.

7.  *Contract—Verbal Agreements—Evidence.*

Where a salesman had a verbal understanding with the buyer, other than those contained in the contract, and where the contract contained the following, "We have no agreement or understanding with salesmen, except as printed or written on this order." Evidence was incompetent to prove that sellers agreed to ship goods to destination over certain connecting lines, over which they were not shipped.

Appeal from the United States Court for the Northern District of the Indian Territory.

Before Justice WM. R. LAWRENCE, November 1, 1904.

Action by Walter Pratt & Co. against Baird Bros. From a judgment in favor of plaintiffs, defendants appeal. Affirmed.

This action was originally brought by Walter Pratt & Co. against the appellants in the commissioner's court for the Third Commissioners' District of the Northern District of the Indian Territory, and was appealed to the United States Court sitting at Nowata. It was there tried de novo, resulting in a verdict and judgment for the plaintiffs (appellees). It was brought to recover of the defendants (appellants) the purchase price of a bill of goods claimed to have been sold and delivered to the defendants. The plaintiffs, Walter Pratt & Co., were manufacturers and wholesale dealers of perfumery and toilet preparations, their factory and laboratory being situated at Iowa City, Iowa, and they had an office in Chicago, Ill. The defendants resided and did business at Bartlesville, I. T. One P. W. Bouldin was the plaintiffs' salesman and agent. On April 24, 1903, the following written agreement was entered into at Bartlesville, between the plaintiffs, through and by their agent, Bouldin, and the defendants:

"Chicago, Ill., No. 115 Dearborn St.,

Suite 608-609.

"Walter Pratt & Co., Manufacturing Chemists and Perfumers·

Profits Guaranteed.

"Walter Pratt & Company hereby guaranty that the purchaser's gross profits, from the sale of the perfumery and toilet preparations bought under this order and hereafter

purchased of said firm, will not be less than 33⅓ per cent. of the amount of this order each year for a period of three years from date of invoice, and the said Walter Pratt & Co. further agree and hold themselves bound, at the end of each year if the gross profits do not amount to 33⅓ per cent. of the amount of this order for that year, to pay to the purchaser a sufficient sum of money by New York or Chicago draft to make up the deficiency, if there be any, or to buy back at the purchase price at the expiration of this agreement all goods remaining on hand at that time. The foregoing is conditional on the purchaser keeping the goods tastefully displayed in his store in the show case furnished by us for that purpose, purchasing from us at least semi-annually sufficient goods to keep this department complete and up to the amount of this order, making settlement for all goods purchased of us as provided in order, sending us by registered mail quarterly from date of shipment a complete and accurate itemized list of all goods sold, with a correct list of all goods on hand at that time, allowing no article to go for less than retail price as listed hereon, and using reasonable diligence in promoting the sale of these goods.

"Exchange. Any goods contained in this order may be returned to us for exchange at any time. To protect us from unreasonable demands for exchange, we require that goods so returned must be accompanied by a new order for goods of an equal value. We pay freight to factory on goods returned for exchange.

"Warranty. All goods are warranted to be same in quality, material, and in all other respects as samples shown by salesman; and if goods are returned by the consumer for any cause they may be returned as above provided. The purchaser agrees to examine and inspect the goods and each. part thereof at once upon their arrival at destination, and if said goods fail to comply with said warranty, he shall, within five days from the date of arrival at destination, give itemized written notice by registered letter to Walter Pratt & Co., Chicago, Ill., otherwise all warranty of said goods is waived.

"Goods cannot be returned for credit on account, except as herein provided. We deliver all goods to the purchaser by delivering them to the transportation company herein specified, purchaser to pay all transportation charges, except as above provided. The following is a list of goods contained in this order:

| | Per doz. | Amt. | Retail. |
|---|---|---|---|
| 4 doz. handkerch'f extracts asst. on easel,_____ | .75 | 3.00 | .10 |
| 2 doz. handkerchief extracts asst. No. 745_____ | 2.00 | 4.00 | .25 |
| 3 doz. handkerchief extracts asst. No. 755_____ | 4.00 | 12.00 | .50 |

(Here follows long list of articles and their price, not here essential).

Total amount of this order,_____$198.88

"Floor counter case, glass back and front, free. Guarantee safe delivery. Grant exclusive sale for one year.

"We give free:

1 Atomizer.

500 Circulars advertising this line of goods.

500 Circulars describing the pictures going with the perpetual advertising system.

Name and address of purchaser printed on above circulars.

3 bottles of perfumery, retail price 50c each, to pay for distributing circulars.

1 graduate.

1 portfolio, No. 6,507, containing sample pictures belonging to the advertising system.

100 booklets, "Suggestions."

Sample sterling silver thimble.

100 Envelopes containing advertising and drafts good for one sterling silver thimble each, mailed by Walter Pratt & Co., to a list of 100 names furnished by purchaser.

1 Walter Pratt & Co. regulation oak showcase.

"Terms. 6 per cent., 30 days from date of invoice, or 2, 4, 6, and 8 and 10 months net, divided into five equal

payments, each for one-fifth the amount of this order. When long terms of credit are taken, account must be closed within 30 days from date of invoice by notes without interest, due in 2, 4, 6, 8 and 10 months from date of invoice. Accounts not closed as provided above will be subject to sight draft without further notice. Time is the essence of this agreement. Separate verbal or written agreements with salesmen are not binding upon Walter Pratt & Co. All conditions of sale must be shown on this order. Positively no goods on commission or open account. This order not subject to countermand.

"Bartlesville, I. T., 4—24, 1903.

"Walter Pratt & Co., Chicago, Ills.—Gentlemen: Please ship us, care of Chicago, Rock Island and Pacific Ry., the assortment of goods listed above, like samples shown us by your salesman, at the prices specified, and in accordance with all the terms above specified; which terms and conditions we have carefully read and find to be complete and satisfactory. We have no agreement or understanding with salesman, except as printed or written on this order. Receipt of duplicate of this order from your salesman is hereby acknowledged.

"Name of Purchaser: Baird Bros•

"Order signed by E. C. Baird."

"Walter Pratt & Co.,

"By P. W. Bouldin, Salesman.
"P—1—27—, 03.

"Read above terms of sale."

This contract and order was signed by both of the parties. Bouldin, the salesman, forwarded the contract and order to the Chicago office by mail, and telegraphed to the manufactory at Iowa City, Iowa, to ship the goods. The goods were at once shipped from Iowa City over the Chicago, Rock Island & Pacific Railway. The contract and order was not received at the

Chicago office until a day or two after the shipment. The plaintiff sent by mail to the defendants at the time the goods were shipped, an invoice of them, as follows:

"Claims, if any, must be made on receipt of this bill.

"Iowa City, Iowa, Apr. 25, 1903.

"M. Baird Bros., Bartlesville, I. T.

Bought of Walter Pratt & Co! (Bouldin), Manufacturing Chemists and Perfumers.
"Terms: 5 per cent. 15 days cash, or 2, 4, 6, 8, notes. Bills payable at Iowa City, Iowa, in Chicago, New York, or St. Louis exchange.

| | Per doz. | Amt. | Retail. |
|---|---|---|---|
| "4 doz. Handkerchief exts. assorted one easel, | .75 | 3.00 | .10 |
| 2 doz. Handkerchief exts. assorted No. 745 | 2.00 | 4.00 | .25 |
| 3 doz. Handkerchief exts. assorted . No. 755 | 4.00 | 12.00 | .50 |
| (Here follows list of articles as set out in contract). | | | |

Total $198.88"

The only difference between the invoice and the contract is, that the contract provides the terms of payment to be "6 per cent. 30 days from date of invoice, or 2, 4, 6, 8, and 10 months, net, divided into five equal installments;" and the invoice calls for "5 per cent. 15 days cash, or 2, 4, 6, 8, notes." The difference arises through a mistake of the person who made up the invoice. On the arrival of the goods at Bartlesville, the defendants demanded of the agent of the railway company that they be allowed to examine the goods before paying the freight; this demand was not allowed. The show case mentioned in the contract was, however, seen and partly examined. On examining the invoice the defendants found the discrepancy

between it and the contract, and at once, to wit, on May 17, 1903, refused to receive the goods and wrote the plaintiffs the following letter:

"Bartlesville, I. T., 5—7, 1903.

"Walter Pratt & Co., Chicago, Ill.—Dear Sirs: Goods covered by your invoice of 4—25 are here subject to your order, refused by us account not shipped or billed as per agreement. We bought these goods from your salesman, terms 6 per cent., 30 days, or 2, 4, 6, 8, and 10 months, 5 equal payments, while you have billed differently. We therefore positively refuse to have anything to do with these goods.

"Yours truly,            Baird Bros."

On May 12th the plaintiffs answered this letter, informing the defendants that they could not understand the meaning of their letter, and stating that they had shipped the goods in strict compliance with the agreement, and setting it out as it was contained in the contract. In response thereto, the plaintiffs received the following letter:

"Davis & Clevenger, Attorneys and Counselors. Practice in all Courts of Territory. Notary in Office.

"Bartlesville, I. T., May 18, 1903.

"Walter Pratt & Co., Iowa City, Io.—Gents: I write you in behalf of Baird Bros., to whom you may have thought you made a binding contract with, to say that we flatly refuse to accept the goods that you shipped them for the reason that you failed to comply with your contract to them; and to say further that the goods are here subject to your order at the A. T. & S. F. depot, and we will answer no more correspondence from you about them. You can either take them or let them alone as you see fit.

"Yours respectfully,

"Davis & Clevenger, pr. Clevenger."

On May 23, 1903, this letter was answered as follows:
"5—23—1903.

"Davis & Clevenger, Attys., Bartlesville, I. T.—Gentlemen: We are in receipt of your favor of May 18th, which you wrote in behalf of your clients, Baird· Bros., and have noted the contents of that letter carefully. We had not heard that you were a court of last resort in your territory, and that your ex parte decision was final and without appeal therefrom. We note that you state you will not answer any more correspondence from us with reference to our account against Baird Bros., but the facts surrounding this matter are such that in the interest of your clients it would be worth while for you to take this matter up with us for the purpose of arranging an amicable adjustment, for we beg to state that the facts are that we have a valid and binding contract with Baird Bros. We have correspondence from them in which they admit their liability under that contract, claiming only, however, an error in the terms of settlement when we rendered them statement of account, which error we had the right to correct under the terms and conditions of their contract with us. They claimed that we billed this account out to them 6 per cent., 30 days, 2, 4, 6, 8, months although our records show that we billed it out to them 6 per cent., 30 days, 2, 4, 6, 8, 10 months' time, settlement to be made by notes as provided in their contract. These are the facts and we shall insist on a settlement of this account by these parties as stipulated in the contract. Their account, under the terms of that contract, falls due on the 25th of this month. Within 30 days from date of shipment, April 25th, they had the privilege of closing the account either by cash less discount of 6 per cent. or by note due in 2, 4, 6, 8, 10 months' time therefrom, without interest. If they allow that time to elapse without settlement in either of the two ways indicated above, they will have the full amount to pay in cash without discount.

"Yours very truly,       W. P. & Co.

"Ct. Ca."

And this was all that passed between the parties until suit was brought, which resulted in a verdict and judgment for plaintiff. The case was duly appealed to this court.

*W. H. Kornegay,* for appellants.

*E. B. Lawson,* for appellees.

CLAYTON, J.   There are 28 specifications of error in the assignment, but they go to only a few propositions of law. The first question we will consider, and the one which the counsel for defendants (appellants) most strongly relies, naming it "the crucial point in the case" is raised by the contention that as the contract on its face shows that the plaintiff is a firm doing business in Chicago, Ill., and as the order was addressed to "Walter Pratt & Co., Chicago, Ill.," the defendants had the right to have their goods shipped from that point, and that as they were shipped from Iowa City, Iowa, although it may have been shown, as it was by the proof, to be the same firm, yet it was such a variance from the conditions of the order as to justify the defendants, on its discovery, to repudiate the contract, and refuse to receive the goods. The contention is that one upon entering into contract with another has the right to know with whom he is dealing; that there may be many things, personal to the other, which might be an inducement to the contract, such as personal integrity, business capacity, the reputation and supposed superior quality of the particular things manufactured by him, his promptness in business affairs, etc. And authorities are cited in support of this proposition, the correctness of which we concede. And if it has been shown that the firm of Walter Pratt & Co., of Chicago, Ill., is a different firm from that of Walter Pratt & Co. of Iowa City, Iowa, the appellants'

case is established. "As is said in a recent case, 'every one has a right to select and determine with whom he will contract, and cannot have another person thrust upon him without his consent. ' In the familiar phrase of Lord Denman: "You have the right to the benefit you anticipate from the character, credit, and substance of the party with whom you contract." ' If, therefore, at the time of making the contract, one of the parties supposed the other to be another than he was, as the latter knew or had reason to believe, there is a mistake as to a material fact and hence no sale. Thus, if A. orders goods of B., C., though B.'s successor in business, cannot fill the order without A's consent, and if he does, A. is not bound. But where A. begins negotiations for a purchase with B.. supposing that he is dealing with C., but, before the negotiations are completed, is informed of the mistake, and completes the purchase, he is bound, and cannot afterwards set up the mistake to defeat his liability." The United States Supreme Court, in Arkansas Smelting Co. vs Belden Co., 127 U. S. 387, 8 Sup. Ct. 1309, 32 L. Ed. 246, says: "But every one has a right to select and determine with whom he will contract, and cannot have another person thrust upon him without his consent. In the familiar phrase of Lord Denman: 'You have the right to the benefit you anticipate from the character, credit, and substance of the party with whom you contract.' " Benjamin on Sales, § 58; Clark on Contracts, 293; Boston Ice Co. vs Potter, 25 Am. Rep. 9.

But in this case the proof conclusively shows that Walter Pratt & Co. were manufacturers and wholesale dealers of perfumery and toilet preparations, with their offices at Chicago, and their manufactory at Iowa City. They were not a corporation, but a firm, doing business under the firm name and style of "Walter Pratt & Co." Neither "Chicago, Ill.," nor "Iowa City, Iowa," was a part of the firm name; the business

at the two places was not a separate and independent one; goods were manufactured by them at one·place, and sold by sample at the other. When the contract had been entered into, it with the accompanying order was sent to the place of business at Chicago, and at the same time the agent who made the contract wired to the manufactory at Iowa City, which is located on the Chicago, Rock Island & Pacific Railway, to forward the goods at once by that railroad, as the contract required. Under these circumstances the mere fact that, after it was disclosed by the contract that the plaintiffs' place of business was at Chicago, they shipped the goods from Iowa City, has no tendency to change the identity of the parties. If Walter Pratt & Co., of Chicago, had been an Illinois corporation, and Walter Pratt & Co., of Iowa City, had been an Iowa corporation, or had been a different firm, there would have been just grounds for the contention; but they were not. They were simply a firm manufacturing goods and selling them, their selling department at one place and their manufacturing at another; and the fact, as before stated, that this contract is made with the Chicago selling department, and shipped from the Iowa manufacturing department, has no tendency to show that the defendants thought they were dealing with a different person than the one who filled the contract. The contention is without merit; and, as heretofore stated, it is also contended that, in the course of business when goods are ordered to be shipped from a business house located at a place designated by their advertisements or otherwise, the buyer has the right, not only to have the order filled by the particular person or firm to whom the order is sent, but to have it shipped from that place. "(a) Acceptance of an offer to result in a contract must be absolute and unconditional. (b) Identical with the terms of the offer. (c) In the mode, at the place and within the time expressly or impliedly required by the offer." Clark on Contracts, § 36. "To constitute a contract there must

be a proposition by one party, accepted by the other, without any modification whatever. If the acceptance modifies the proposition in any particular, however trifling, it amounts to no more than a counter proposition; it is not in law an acceptance which will complete the contract. The mere proposal of a bargain by one person to another imposes no obligation upon the former until it is accepted by the latter according to the terms in which the offer is made. Any qualification of or departure from those terms invalidates the offer unless the same be agreed to by the person who made it." Mr. Mechem, in his work on Sales (section 1124), says that when no place is specified delivery is to be where the goods were at the time of the sale. The contract specified that delivery was to be to the Chicago, Rock Island & Pacific Railway. And as that railway runs through both Chicago and Iowa City, it was left uncertain; and the goods at the time of the sale having been at Iowa City, the delivery to the railway company at that place was sufficient, especially so when it is considered that they were delivered by the plaintiffs at a place where one of its departments of business was located.

But it is also contended that, as at the time of the delivery of the goods to the railway company, the plaintiffs, by their invoice, sent at the same time the goods were forwarded, set out in it different terms of payment from that contained in the contract, the defendants could, on its discovery, repudiate the contract and refuse to receive the goods. The contract gives 30 days' time for payment, with 6 per cent. discount, if paid within that time in cash; or, within that time, to be settled by five notes, due in 2, 4, 6, 8, and 10 months. If the paper heretofore referred to were really but an order, then its acceptance should have been in accordance with its exact terms; and when the plaintiffs shipped the goods on the invoice changing the conditions of payment, it would not have been an

acceptance of the order, but only a counter proposition, which the defendants could accept or refuse at their discretion; and it was upon this ground that the defendants refused to receive them. The privilege of rejecting goods by a buyer and refusing to pay for them arises in cases where there has been an offer, and the acceptance is not in accordance with the offer; and this is on the theory that until there is an acceptance by the seller, either in words or conduct, complying in all particulars with the offer, there is no binding contract between the parties; and a delivery in compliance with the terms of the offer is an acceptance, and passes title to the goods to the purchaser. But, as heretofore shown, title only passes when the acceptance is in accordance with the terms of the offer; and if not in accordance with the offer, there being no contract of sale consummated between the parties and the buyer having no title to the goods, he may reject them and refuse payment. But, if there be such a contract as will pass title from the vendor to the vendee, he may not do this for he will not be allowed to reject his own property and refuse to pay the purchase price. And, therefore, it becomes necessary for us to examine the contract and determine if it be a mere offer or order, as it is called, or a contract of sale which vested in the defendant title as soon as it was executed by the signature of the parties.

The agreement commences with a guaranty of certain profits to the purchaser of the goods bought under this "order." Then follows a provision for the exchange of any of the goods for others, after which there is a warranty clause, to wit: "All goods are warranted to be same in quality, material, and in all other respects as samples shown by salesman, and if goods are returned by the consumer for any cause, they may be returned as above provided. The purchaser agrees to examine and inspect the goods, and each part thereof, at once upon their arrival at destination, and if said goods fail to comply with

said warranty he shall, within five days from the date of arrival at destination, give itemized written notice by registered letter to Walter Pratt & Co., Chicago, Ill.; otherwise all warranty of said goods is waived.   Goods cannot be returned for credit on account, except as herein provided.   We deliver all goods to the purchaser by delivering them to the transportation company herein specified; purchaser to pay all transportation charges, except as above provided."   Then follows a long itemized list of the goods, giving the number of articles of each kind, the price of each, the total, and the retail price of each. The terms of the sale are next set out, as follows:   "Terms 6 per cent., 30 days from date of invoice, or 2, 4, 6, and 8 and 10 months net, divided into five equal payments each for one-fith the amount of this order.   When long terms of credit are taken, account must be closed within 30 days from date of invoice by notes without interest due in 2, 4, 6, 8, and 10 months from date of invoice.   Accounts not closed as provided above will be subject to sight draft without further notice.   Time is the essence of this agreement."   Then follows the order of shipment, and the signature of the parties, as follows:

"Bartlesville, I. T., 4—24, 1903.

"Walter Pratt & Co., Chicago, Ills.—Gentlemen:   Please ship us, care of Chicago, Rock Island & Pacific R'y, the assortment of goods listed above, like samples shown us by your salesman, at the prices specified, and in accordance with all the terms above specified; which terms and conditions we have carefully read and find to be complete and satisfactory. We have no agreement or understanding with salesman, except as printed or written on this order.   Receipt of duplicate of this order from your salesman is hereby acknowledged.

"Name of Purchaser:     Baird Bros.

"Order signed by          E. C. Baird.

Walter Pratt & Co.

"By P. W. Bouldin, Salesman.'

While there are no direct words to the effect that the one sells and the other buys, yet no other conclusion can reasonably be reached, but that it was the intention of the parties to enter into a contract of sale.  The goods were specified, the terms of the purchase, a warranty of the quality, and to whom they were to be delivered, and the instrument further provided that the defendants could not countermand the order, and it was signed by both of the parties.  The instrument might well have been considered an offer, or an order, if it had been signed by the defendants only; but if an order, when it was signed by the plaintiff, that act was certainly an acceptance of its conditions, and consummated the binding contract between the parties.  Regarding it, then, as an executory contract of sale, was the defendant, because of the fact that the invoice stated the terms of payment and credit differently from the contract, justified in repudiating the contract and refusing the goods?  If the contract had the effect of vesting in the defendants the title to the goods at the time it was executed, it is clear they would not; but if the contract is such that title does not vest in the buyer until delivery in accordance with the terms of the contract, then if the delivery be not in accordance with its terms, the buyer may ordinarily repudiate the contract and refuse to accept the goods.  Mechem on Sales, 810; Clark, Contracts, §§ 14-27; Tiedeman on Sales, § 84.

In this case the contract provides:  "We deliver all goods to purchaser by delivering them to the transportation company herein specified;" and the order for the shipment of the goods provides, that they shall be shipped "in care of the Chicago, Rock Island & Pacific R'y."  This was an executory

contract of sale, and, according to the rule, title did not pass until the goods were delivered to that railway company. And it was the duty of the plaintiffs to deliver them in accordance with the terms of the contract; and when, upon the delivery, they informed the defendants, in effect, by the invoice which they sent, that the goods were delivered upon condition, that he should have 15 days instead of 30 in which to pay cash if he so chose, and that the discount would be 5 per cent. instead of· 6 as provided by the contract, and that if he paid by notes, he must execute four notes, payable in 2, 4, 6, and 8 months, instead of five payable in 2, 4, 6, 8, and 10,·as he had contracted to do, thus shortening the terms of credit, which was not a delivery in compliance with the terms of the contract, and ordinarily this would justify the defendants in repudiating the contract and in refusing to receive the goods.

But it is clearly shown by the proof that the terms stated by the invoice, wherein they differed from the contract of sale, was made by mistake; that the contract, when executed in Bartlesville, had been sent by the salesman to Chicago, and a telegram sent to Iowa City; and not having the contract before them, for some reason, probably because it was their· usual rate, by mistake, and with no intention of changing the terms of the contract, the invoice was made as it was. When the defendants received the invoice, because of this, they refused to receive the goods, and at once wrote plaintiffs at Chicago, informing them of that fact, stating the reasons for their refusal to be that: "We bought these goods from salesman; terms, 6 per cent., 30 days, or 2, 4, 6, 8, and 10 months, 5 equal payments, while you have billed differently." Immediately on receipt of this letter, the plaintiffs wrote defendants that they could not understand their reasons for rejecting the goods, and stated the terms upon which they had shipped the goods, being identical with the terms of the contract. The evidence

further shows that the transaction was properly entered in plaintiffs' books of account, that the incorrect statement in the invoice was simply a mistake on the part of the person who shipped the goods and made out the invoice at Iowa City, and that there was no intention of changing the terms of the contract was proven beyond question. And such a mistake on the part of the plaintiffs, under the circumstances, was not a breach of the contract, so as to entitle the defendants to rescind. If the plaintiffs had insisted on the contract being performed in accordance with the terms of the invoice, it would have been a different thing; but they did not. As soon as the mistake was brought to his knowledge, he explained and corrected it at once, and not only offered to carry out the contract, but insisted that it be done. In the case of Miller et al vs Benjamin (N. Y.) 37 N. E. 631, the defendant contracted to purchase from plaintiff a certain amount of split steel of two sizes (Nos. 27 and 29), each month, for a specified time; the order to be given each month, and to name the size wanted. June and July, size 29 was ordered, and, by mistake, 27 was sent. Plaintiff corrected the mistake at his own expense when notified. On account of the mistake, defendant refused to order any more slits. It was held that plaintiff's mistake did not amount to a breach of the contract, so as to entitle defendant to rescind. In Githens vs Zorn, 1 Wkly. Notes Cas. (Pa.) 118, A. agreed to buy from B. 70 barrels of white beans, which were to come up to sample. B. commenced delivering the barrels, which A. opened as received, and, when 20 barrels had been delivered, it was found that one contained red beans. B. immediately offered to change the barrel for one of white beans, which offer A. refused, and refused to receive any of the barrels, declaring that he had rescinded the contract. Held, that A. was not justified in rescinding the contract, and B. was entitled to recover. Tiedeman in his work on Sales, § 107, says: "If the first attempt at delivery proves

unsuccessful; a second attempt may be made, and it will be just as effective as if it had been done right in the first instance, provided the time of performance had not expired." In this case no time for delivery was fixed by the contract, and therefore the plaintiffs would only be required to deliver them within a reasonable time; and if they had been returned by the defendants, or taken back by the plaintiffs, and the mistake immediately corrected, inasmuch as the first delivery was ineffectual, if it were, and the goods were at once reshipped, in strict compliance with the contract, it would seem the defendants would be required to receive them. But the mistake was corrected without a reshipment, and that at once; and why would not this have the effect of a prompt reshipment? Why require the plaintiffs to go to the expense of shipping the goods back to Iowa City and return, for the mere purpose of correcting the unintentional errors of an invoice of goods delivered on a contract of sale? All of the goods contracted were at the depot at Bartlesville. The contract, signed by plaintiffs, fixing the price, was in defendants' possession; the error was promptly corrected, and no damage, except that caused by the trifling delay of a few days, could occur to the defendants. We are of the opinion that the exception of the appellants on this point is not well founded.

A number of specifications of error go to the refusal of the court to permit certain testimony to go to the jury tending to establish the fact, that the show case mentioned in the contract was different and inferior to the sample by which it was sold, and to the instruction to the jury, which virtually took from them the consdieration of that question. The goods were sold by sample. It is claimed that, while the salesman had no sample of the show case, yet one that was in defendants' store was pointed out, and the one to be shipped was to be like it. The contract provided, in the warranty clause, that all goods

were warranted to be the same in quality, material, and in all other respects as samples shown by salesman; and, further, that the purchaser "agrees to examine and inspect the goods and each part thereof at once upon their arrival at destination, and if said goods fail to comply with said warranty, he shall, within five days from the date of arrival at destination, give itemized written notice    *    *    *;    otherwise all warranty of said goods is waived." This requirement of the defendants was not complied with. In their letter, they only complain of the fact that the goods were invoiced differently from the contract. Until the answer in the case was filed, there was no complaint made as to breach of warranty. It was an after-thought, and comes too late. In the case of Walter Pratt & Co. vs Meyer (Ark.) 87 S. W. 123, the Supreme Court of Arkansas, in passing upon a provision of a contract identical with this, recently held that in a contract for the sale of goods by sample, a provision that the buyer should examine the goods promptly on delivery, and if they failed to comply with the warranty, he would, within five days from the date of delivery, give notice of such failure to the seller, and, if such notice was not given, all warranty of the goods should be waived, was valid; and a failure to give notice within the time specified operated as a waiver of the warranty. To the same effect is Walter Pratt & Co. vs W. C. Morris & Co., 87 S. W. 783, decided by the Supreme Court of Kentucky on June 1, 1905. And therefore, when it was shown, as it was in this case, that the defendant had failed to give the written notice of the defect claimed in the show case, as required by the contract, whether he had examined it or not, he should not have been allowed to prove the defect, or anything else in relation to it, nor should the question have been submitted to the jury at all. The court, after telling the jury, in substance, that there was no evidence of an inspection of the goods by the defendants upon their delivery, left that question for the jury to decide,

the effect of which was that, if they found there had been an inspection, and if, in the judgment of the jury, the goods did not come up to the contract stipulations, they were, of course, to find a breach of the contract on the part of the plaintiffs, and return their verdict for the defendants. This was error. The breach of the contract, on the part of the plaintiffs so as to annul it and give the defendants the right to repudiate it and refuse the goods, did not depend upon that alone, but the inspection was to be followed within five days with a written itemized notice by registered mail to plaintiffs of the defects; otherwise the breach was waived. There is no pretense on the part of the defendants or anybody else that this was done. There is not a scintilla of evidence to support it; on the contrary, it is admitted on all sides that it was not. The defendants in their letter make no mention of it, but rely solely on the error contained in the invoice as being the breach justifying them in refusing payment. Had there been the most perfect inspection, and the goods found wholly defective, the defendants might still have waived those defects, and taken the goods; and by refusal or neglect to forward the itemized notice, as the contract required, this they did, and therefore they may not refuse payment on this account; and the jury should have been so informed. That they were not, however, was not prejudicial to the defendants, and therefore not reversible error. After the testimony had made it clear that there had been a waiver by the defendants as to the quality of the goods, it was not error to refuse testimony tending to show an inspection.

The sixth specification of error is: "The court erred in refusing to allow the witness, Baird, to state over what road he directed the goods to be shipped, as follows: 'Q. What road did you tell him to ship the goods to Bartlesville on?'" The Chicago, Rock Island & Pacific Railway does not pass through Bartlesville. At some point on that railroad, freight

coming from the north destined to Bartlesville had to be diverted
and forwarded on some other line of railway. It seems that
both the Atchison, Topeka & Santa Fe and the Missouri, Kansas
& Texas railroads had such connections. The goods in question,
after leaving the Rock Island, came over the Santa Fe. It
is claimed by the defendants that, at the time the contract
was executed, he had a verbal understanding with the salesman
that the goods were to be shipped over the Missouri, Kansas
& Texas, after leaving the Rock Island; and that the failure
to comply with this condition was a breach of the contract
such as to justify a refusal of and payment for the goods. There
is a provision in the contract upon which the goods were sold
that "separate verbal or written agreements with salesman
are not binding upon Walter Pratt & Co. All conditions of
sale must be shown on this order." In the order the defendants
say: "We have no agreement or understanding with sales-
man, except as printed or written on this order." The language
of the order directing the shipping of the goods is: "Please
ship us, care of Chicago, Rock Island & Pacific Railway."
Neither the Santa Fe, the Missouri, Kansas & Texas, or any
other railroad is mentioned. If it be true that there was such
a verbal understanding with the salesman as claimed, in view
of the stipulations of the contract that no such agreements
were to be binding, the court did not err in rejecting all testi-
mony tending to establish such an agreement. That a contract
between parties providing that no agreements, not contained
in the contract shall be binding, is a valid one. See Walter
Pratt & Co. vs Meyer, supra.

Finding no reversible error, the judgment of the court
below is affirmed.

TOWNSEND and GILL, JJ., concur.

RAYMOND, C. J., not participating.