HARPER v. LOVELL.

(*Knoxville.* November 17, 1900.)

1. GUARDIAN AND WARD. *Guardian's liability.*

A guardian cannot be held by the administrator or next of kin of his deceased ward to account for a fund consisting of a legacy to the ward, which, as to the corpus, had been, without authority, paid over by the executor to the guardian, and, as to the interest, had been exhausted by the guardian in supplying the ward with necessaries, where, by the terms of the will, the corpus had reverted to testator's estate upon the ward's death before attaining his majority.

Cases cited: McAlister v. Olmstead, 1 Hum., 210; Galbraith v. State, 10 Lea, 574.

2. WILL. *Legacy reverts to testator's estate, when.*

Under the terms of the will set out in the opinion, the principal of the legacy to the ward reverted, on his death before his majority, to the testator's estate, the ward or his guardian being entitled only to the interest that accrued thereon in the ward's lifetime. (*Post, pp. 615, 617, 621, 622.*)

FROM COCKE.

Appeal from Chancery Court of Cocke County. JOHN P. SMITH, Ch.

W. J. McSWEEN for Harper.

W. H. JONES and WASHBURN, PICKLE & TURNER for Lovell.

WILKES. J. This is a bill by the administratrix of John F. Harper to recover from his former guardian a sum of money which it is alleged is, or ought to be, in the hands of the

guardian belonging to the ward at the time of his death.

The Chancellor, upon an adjustment of the guardian's accounts, gave judgment for $737.96 in favor of complainant, and the guardian appealed. Upon hearing in the Court of Chancery Appeals the judgment of the Chancellor was reversed, and complainant's bill was dismissed, and she has appealed to this Court. The complainant is the mother as well as the administratrix of her son, and is entitled to whatever estate the son has, and recovery is sought in both rights. The ward, John F. Harper, was the bastard son of A. Ramsey, who died after making his will, never having been married. In his will he gave to John F. Harper $2,500 upon certain terms and with certain limitations, as follows: "The interest on the share of John F. Harper shall be paid to him only when he becomes twenty-one years of age, by my executor, the interest to be paid annually for his benefit. But in the event of his death before he becomes of age, his share shall revert to my estate, but no power of sale, assignment or transfer shall exist on his part of his interest or legacy in my estate, and my executor will not recognize any such sale or assignment if made, and will pay the legacy only to him in person as herein provided, to him or his heirs only."

The estate of Ramsey proved insufficient to pay

all the legacies, and only about twenty per cent. has been paid. Lovell qualified as guardian of John F. Harper in 1892, and received from the executor of Ramsey $666.86 in March, 1894. It was paid to him in this way: He bought some of the real estate of Ramsey when it was sold by his executor and gave his note for it, and this note was given up to him as a payment by the executor of that amount to him as guardian. The executor states that the reason he thus put the fund into the hands of the guardian was that the legatee could have something to live on. He does not appear to have considered whether he was paying the sum as interest on the legacy due the ward or as part of the principal, and the guardian does not appear to have considered that feature of the case. The Court of Chancery Appeals reports that the important questions submitted to it are (1) whether the sum paid to Lovell as guardian was paid to him as interest on his legacy or as a part of the principal; (2) whether the guardian was authorized to expend upon his ward any more than the income or interest on the funds in his hands, and if so, were the amounts expended by him paid for necessaries such as the Court of Chancery Appeals would have approved if application for that purpose had been made to it in advance; (3) can the defendant have credit for the items without filing a cross bill; (4) if the amounts paid the guardian

was upon the principal of the legacy given to his ward by the will of Ramsey, is the guardian liable to complainant for any part of it, his ward having died before he became of age.

The Court of Chancery Appeals was of opinion that the executor of Ramsey, under the terms and conditions of the will which we have set out, had no authority to pay to the guardian of Harper anything except the interest on the legacy previous to Harper's arrival at age, and that if the legatee, Harper, died before reaching 21 years of age, the legacy was to revert to the estate of Ramsey.

It is insisted by counsel that if the guardian received the fund as the fund of his ward, he is estopped to deny that it is his estate, and the Court of Chancery Appeals hold this contention well made, citing *McAlister* v. *Olmstead,* 1 Hum., 210; *Galbraith* v. *The State,* 10 Lea, 574.

But that Court also reports that this holding does not settle the question whether the amount was paid as principal or interest, and it reports as a conclusion that it is not material whether it was paid as principal or interest, that it was the duty of the guardian to properly manage the same and to account for it.

It is assigned as error that the Court of Chancery Appeals should have held that this fund was paid to the guardian or arranged with him as part of the principal of the legacy given to the

ward, and only the interest on it could be legitimately consumed for the ward's expenses without first obtaining the sanction of the Chancery Court to trench on the corpus, if the corpus could be reached at all; that the expenditures made were not proper, and that no allowance should be given the guardian for his services. This is a summary of the several assignments made.

It appears that the ward had no other property than this amount coming to him from the estate of Ramsey, that he was a reckless, dissolute character, who would not work, and was killed before he reached twenty-one years of age. It also appears that the guardian had a store, and furnished to the ward articles out of it until he consumed in amount more than the guardian ever received, and that the ward was due him in some amount before he ever received any fund. The Court of Chancery Appeals reports that many of the articles furnished were, or could be considered, necessaries and some should not, but upon an examination of the entire list that Court was satisfied that the legitimate expenses of the ward, together with a reasonable compensation for his services, more than cover the amount received from Ramsey's estate, and this being apparent from an inspection of the account and list of expenses, a reference was not necessary. It appears that the guardian sent the boy to school so far as he could prevail on him

Harper *v.* Lovell.

to go, and paid some school bills and for books and clothes.

A petition to rehear was filed in the Court of Chancery Appeals, in which that Court was requested to make part of its report an itemized account of the articles furnished to Harper from Lovell's store.

The Court of Chancery Appeals declined to do so, stating that there were over two hundred items in it, and that it covered seven legal record pages, and it did not consider it proper to set out in so much detail the evidential facts upon which it based its conclusions, but only the result of its finding. That Court gives, however, a sort of summary of the articles furnished, as follows:

Tobacco was furnished 86 times, smoking tobacco 9 times, pipes 3 times, candy 48 times, sardines 24 times, knives 9 times, neckties 9 times, canned peaches 11 times, cheroots 10 times, oysters 46 times, apples 5 times. That Court reports also that it is impracticable to get the exact charge for separate items, as several would be grouped in one entry— for instance, oysters and sardines, 20 cents. How much was for oysters and how much for sardines, that Court cannot tell. Also 15 cents for sugar and snuff—how much for each could not be stated. Sugar and crackers, 10 cents, candy and tobacco 15 cents, candy and oysters 15 cents. They find, however, that $9.15 is charged for tobacco, $5.65 for oysters, $3.75 for sardines, $4.50

for candy, $2.90 for canned peaches, $3.37 for cigars and cheroots, $3.35 for neckties, $3.35 for pocketknives, $2.10 for pin breastpins and one scarf pin, $25 for a double-barreled gun, $3.66 for shot, powder, and shells, 20 cents for cologne, 30 cents for hair dye, $1.25 for fish hooks, $1 for kid gloves, $1.50 for a pair of slippers for his sister, bay rum 30 cents, watermelons 43 cents, hair oil 15 cents. The Court reports that the boy was about 18 years old, that he had no home and no business, and would not work, and could not be controlled, and was generally worthless and reckless. The Court of Chancery Appeals report that among the necessaries might be classed oysters, sardines, crackers, canned peaches and a moderate supply of candy, as they were food, though not of the most wholesome kind; also the gun, ammunition, and handkerchiefs and a small amount of cash, schooling, clothes, etc., and other items were classed as necessaries as to which no serious question is made.

That Court protests against the following articles as not articles of necessity: Cigars and cheroots, hair dye, hair oil and bay rum, breastpins; that neckties, pocketknives and candy were furnished too lavishly. Kid gloves and slippers were placed under the ban, as was also tobacco, two quarts of chestnuts, cinnamon oil, onions, and honey. On this last item that Court says that separately they might be allowed, but in combination they cannot.

Chewing gum, cologne, rat poison, two watermelons in one day—that Court was of opinion one might be allowed, but two were not necessaries, but extravagances.

The Court of Chancery Appeals was divided or in doubt as to the following items: Fishhooks, a trot line, tobacco in even moderate quantities, one box corn salve, and some other items of less importance.

That Court, however, repeats its former holding that, eliminating all proper charges and allowing a reasonable compensation for services, there were legitimate credits for enough to cover all the fund received by the guardian.

Under the view that we take of the case, it is not necessary that we pass upon the correctness of the classification made by the Court of Chancery Appeals as to what are or are not necessaries. The language of the will of Ramsey under which the legacy was raised is quite crude and inconsistent, and not altogether intelligible, but we think that, under a proper construction of the item giving this legacy, neither the principal sum of $2,500 nor any part of it was to become the absolute property of John F. Harper until and unless he reached his majority of 21 years, and in the event of his death prior to that time, the principal of the legacy was to revert to the estate of Ramsey the testator. This being so, the guardian could consume no more than the interest

upon the legacy for the benefit of the ward, and the principal would revert to the estate of Ramsey. The complainant, claiming as the administratrix and distributee of her son, would have no right to any of the principal fund, and, indeed, to none of it unless some part of the interest upon the legacy might have been unconsumed. It is apparent from the report of the Court of Chancery Appeals that such is not the case. It follows that the complainant cannot recover the principal sum whatever it may be, and she has, therefore, no right to any recovery against the defendant, whatever may be the rights of the estate of Ramsey, which we do not determine, as that estate has no representative before the Court. It follows that we reach the same result as to complainant's rights as did the Court of Chancery Appeals, but upon different grounds, and the complainant's bill must be dismissed at her costs.