# NANCE, Inc. v. WINEBARGER et al.—
## 222 S. W. (2d) 231.

Eastern Section.    February 26, 1949.

Petition for Certiorari Denied by Supreme Court, July 9, 1949.

230

Simmonds & Bowman, of Johnson City, for appellants.

Hawkins & Bryant, of Johnson City, for appellee.

McAMIS, J. A. M. Winebarger and Deakins Motor Company, a corporation, defendants below, appeal for a reversal of a decree awarding complainant Nance, Incorporated, the possession of a 1948 model Oldsmobile automobile.

Nance, Incorporated, is the dealer for the manufacturer of Oldsmobile automobiles. It has a policy not to sell new cars when it is known that they will likely not be used personally by the buyer or may fall into the hands of

other dealers and become the subject of speculation at prices above the list price fixed by the manufacturer. We infer that the manufacturer has a similar policy which it imposes upon its dealers.

On August 27, 1948, at about 11 A. M. defendant A. M. Winebarger saw two new Oldsmobiles in the show window of Nance, Incorporated. He went immediately to defendant Deakins Motor Company and, without disclosing his purpose, obtained a 1946 De Soto which he took out for trial. He then drove the De Soto to the show room of Nance, Incorporated, where he contacted Jack Allen, a salesman. Allen, after trying out the De Soto, told Winebarger he would trade for around $950.00 difference. Winebarger offered to trade for $800.00. Allen then made a definite offer to trade for $950.00 to which Winebarger replied, "I will go and see my wife and let you know this afternoon." Allen said nothing and it is not claimed that Winebarger requested him to hold the offer open until he returned or that he agreed to do so.

Winebarger drove the De Soto back to Deakins Motor Company and sought to induce the saleman to reduce the price of the De Soto from $1,600.00 to $1.500.00. This request was submitted to Mr. Deakins, the manager, who declined to reduce the price. When it appeared that Winebarger would not trade at $1,600.00 Deakins told him to go ahead and trade for the Oldsmobile "for him" and he would sell it or "work it out someway". A bill of sale was thereupon made out and predated to August 24, 1948 showing a transfer of the De Soto to Winebarger. Winebarger admits that he invested nothing in the De Soto and makes no claim that he ever intended to discuss the matter with his wife as suggested in his conversation with Allen.

At about 12:30, Winebarger returned to Nance, Incorporated, and, finding Allen, the salesman, out to lunch, he told Mr. Nance that he had traded the De Soto to Allen for the Oldsmobile, not that he merely had an offer from Allen. Nance replied that if he had traded with Allen he would have to close the trade with him. However, upon Winebarger's insistence Nance agreed for him to take the Oldsmobile out for the purpose of getting the license so that he could close the trade when Allen returned and by this means get back to his work sooner. Winebarger left the De Soto and the bill of sale to him from Deakins Motor Company at Nance, Incorporated, and drove the Oldsmobile to Deakins Motor Company which sent one of its employees to get the license. Winebarger immediately returned to Nance, Incorporated, and, representing to an employee in the shop that he had purchased the Oldsmobile, had the plates put on and, without further discussion with Allen or Nance, took the Oldsmobile to his place of employment. He did not sign a bill of sale for the De Soto nor was there any memorandum signed by Nance, Incorporated.

When Allen returned from lunch at about 2 P. M. he found the Oldsmobile gone and Allen and Nance went to see Winebarger insisting that there had been no sale and adding that the Oldsmobile had been ordered specially for another customer and had to be delivered that day. It does not appear that there was any basis for the latter statement. Winebarger declined to surrender the Oldsmobile and Allen and Nance left the De Soto and the bill of sale for it and returned to their place of business. The present suit was promptly instituted as an action of replevin.

Mr. Nance testified that while there was no sale of the Oldsmobile he would not go through with the deal be-

cause an examination of the bill of sale for the De Soto when Allen returned convinced him that the Deakins Motor Company was the actual purchaser or at least in some way interested in the purchase of the Oldsmobile and that he so advised Winebarger.

The Chancellor found that Winebarger's negotiations with Allen did not result in a continuing offer but, at most, an offer subject to countermand at any time; that Winebarger's conversation with Nance when he returned to accept Allen's offer resulted in nothing being done that would bind the seller; that there was no delivery claimed by Winebarger and that the seller withdrew the offer before acceptance as it had a right to do. It was further held that Winebarger's failure to disclose his agency for Deakins Motor Company did not make out a case of fraud cognizable in law and that there was no imputation of bad faith growing out of the purchase for an undisclosed principal. It was found unnecessary to determine the effect or materiality of the Statute of Frauds, Code Section 7197, making voidable a parol sale or agreement to sell personal property valued at $500.00 or more. However, the seller has here renewed conditionally its insistence that the Statute does apply and that, if contrary to the Chancellor's holding, there was an otherwise valid acceptance of a continuing offer to sell, the acceptance could not be by Winebarger in an entirely different capacity than that in which he was acting when the offer was made or, stated differently, that the seller had a right to know with whom it was dealing and that there was no meeting of the minds of the parties on that material point.

■■ Though the contrary is insisted, in a broad appeal in an equity cause it is not requisite that the successful party who is satisfied with the result appeal in

order to obtain a decision on pretermitted questions. The Court, on appeal, may reach the same result but upon different grounds. Harper v. Lovell, 105 Tenn. 614, 622, 59 S. W. 337; Butler v. Eureka Security Fire & Marine Ins. Co., 21 Tenn. App. 97, 105 S. W. (2d) 523; Fletcher v. Russell, 27 Tenn. App. 44, 177 S. W. (2d) 854. The right in the interest of justice to notice errors not formally assigned is reserved. Rule 11, Court of Appeals; Butler v. Eureka Security Fire & Marine Ins. Co., supra. Especially is this course proper where the point is relied upon in the reply brief as here

We think the question of whether the seller made a binding or continuing offer should be adjudged in the light of the statute. If, in the absence of any memorandum in writing, the offer was voidable it was subject to withdrawal at any time until acceptance concurring with the execution of a memorandum or part payment or performance following oral acceptance, notwithstanding the intention of the parties was to the contrary.

It was so held in McArthur v. Faw, 183 Tenn. 504, 193 S. W. (2d) 763, 764. There the seller had made an unenforceable offer to sell and the Court said, "it is clear that, prior to February 10, 1943, when McArthur remitted to Faw his check for $16,000, no enforceable contract had arisen obligating Faw to sell . . . That is to say, had Faw promptly returned this check and expressed his refusal to sell to McArthur, this would have concluded the matter."

We think precisely the same situation is presented here. There was no memorandum in writing of the alleged offer to sell. Possession was obtained without the consent of the seller, and there was no partial payment or part performance prior to rejection when Nance

and Allen returned the De Soto and demanded possession of the Oldsmobile.

The Statute clearly provides that an oral contract to sell or sale of property of the value of $500.00 or more shall be unenforceable in the absence of delivery, part payment or memorandum signed by the party to be charged. Admittedly there was nothing paid and nothing in writing and, as we hold, there was no intentional delivery by the seller. We see no escape from the conclusion that, even if there is an implication that the offer was to remain open for a reasonable time, a question not necessary to decide, it was voidable at the election of the seller and an oral acceptance by the purchaser would likewise have been unenforceable in an action against him. Ashley & Gibbs v. Preston, 162 Tenn. 540, 39 S. W. (2d) 279.

Although affirmance can well be rested on what has been said it is proper to say that we find ourselves in disagreement with the learned Chancellor's holding that acceptance by Winebarger in the capacity of agent for an undisclosed principal would not affect the right of Deakins Motor Company to claim the benefit of the contract.

The general rule is the one applied by the Chancellor that where an agent having authority to bind his principal enters into a simple contract as if acting for himself the undisclosed principal may enforce the contract. Am. Institute, Restatement Agency, Section 302; 2 Am. Jur. 320; Foster v. Smith, 42 Tenn. 474, 88 Am. Dec. 604; Brownwell-Drews Lumber Co. v. East Tenn. Lumber Co., 3 Tenn. Civ. App. 581.

However, there are important exceptions to the general rule. In Foster v. Smith it was held that, where the other party to the contract was ignorant of the fact that

he was dealing with an agent, the principal's right of action on the contract is subject to all equities of the other party growing out of his mistaken belief that the agent was principal. In American Jurisprudence, supra, the general qualification is laid down that the undisclosed principal may claim the benefit of the contract only "so far as he can do so without injury to the other party by substitution of himself as agent." The general rule is itself an exception to the right to choose with whom a contract will or will not be made, McClanahan v. State. Automobile Mut. Ins. Co., 21 Tenn. App. 249, 108 S. W. (2d) 1102, and so extensive and numerous are the exceptions that it is said: "The exceptions taken collectively define the scope of the rule and indicate its underlying principle." Annotators Comments 130 A. L. R. 664, where page 665, it is further said: "The decisions show that the third party may (in the absence of waiver by him) be held liable to the undisclosed principal only in those cases where the contract is not in its peculiar nature personal to the agent, and where the circumstances under which it is made, or its terms, do not exclude liability to the principal."

An intention to make the personality of one of the parties an essential or material part of the contract may be inferred from refusal to deal with any other individual or individuals of another class, by the terms of the contract or merely by circumstances, though an exclusion of the principal will not be presumed. Annotation 130 A. L. R. 664—682.

We think it appears without serious dispute in this case that the policy of the seller was not to sell to other dealers but only to individuals desiring cars for personal use. Defendants were well aware of this policy. Why

else did Winebarger bring his wife into the discussions and predate the bill of sale to the De Soto except to conceal from the seller the fact that the car was being purchased for speculation by a dealer and not by an individual desiring it for personal use? The circumstances are hardly less impelling than if the seller had expressly provided in the offer that it was conditional upon the purchase being for the personal use of the offeree.

We think clearly the presumption against an intention to deal personally only with the agent is overcome by the circumstances. The would-be purchaser purposely, if not fraudulently, concealed its identity from the seller because it knew or at least believed it could not purchase the car if its identity became known to the seller.

█ The offer was made to Winebarger as an individual. If there was ever any acceptance of the offer it was by Winebarger in the capacity of an agent. The rule is that an offer can be accepted only by the person to whom it is addressed. 12 Am. Jur., Contracts Sec. 38; Nutmeg State Mach. Corp v. Shuford, 129 Conn. 659, 30 A. (2d) 911, 147 A. L. R. 1168, citing Williston on Contracts, Sec. 80; Restatement 1 Contracts, Sec. 54. See as to a contract of sale Glenn v. S. Birch & Sons Const. Co., 52 Mont. 414, 158 P. 834.

Though we base our conclusions upon somewhat different grounds, we hold that the Chancellor was correct in awarding possession of the car to complainant and the decree will be affirmed at the cost of appellants.

Hale and Howard, JJ., concur.