McCLANAHAN v. STATE AUTOMOBILE MUT. INS. CO.—108 S. W. (2d), 1102.

Eastern Section. July 31, 1937.

Petition for Certiorari denied by Supreme Court, October 3, 1937.

Taylor & McCanless, of Morristown, for appellant.
A. T. Drinnon, of Morristown, for appellee.

PORTRUM, J.  On the 6th of May, 1935, one Pierce McCarter made application in writing, and in the name of George McClanahan, for a policy of fire and theft insurance covering a Ford sedan automobile to J. M. French, agent of the defendant State Automobile Mutual Insurance Company, and a policy of fire and theft insurance was issued in the name of George McClanahan, based upon the ap-

plication bearing his name, covering the actual value of the car at the time of its loss.

The said Pierce McCarter is an admitted gambler and bootlegger, and the complainant George McClanahan is likewise a bootlegger living in the home of McCarter. Some time prior to July, 1935, the said George McClanahan was apprehended in North Carolina, transporting 70 odd gallons of whisky, and as a result he was tried and sentenced to 2 years in the state penitentiary, but was able to have his term reduced to 6 months. .

In the month of July, 1935, the insured's car was allegedly stolen from the streets of Newport, in the early hours of the evening, in front of a picture show where McCarter, who was in control and custody of the car, had gone to view a picture. The car was wrecked upon the highway and discovered the following morning, but when McCarter discovered the car was stolen when he came from the picture show he immediately telephoned the agent at Morristown notifying him of the theft of the car, and the agent communicated with him thinking he was McClanahan. Soon thereafter the company sent its attorney to Newport to investigate the loss, where he interviewed McCarter under the apprehension that McCarter was in fact McClanahan, the insured named in the policy. At this time McCarter filled out and signed a proof of loss in the name of McClanahan, swearing to its contents. The attorney had to report to his company for directions and return again to Newport to make or attempt an adjustment of the loss. He thought McCarter was McClanahan, as McCarter signed the proof of loss and swore to it in the name of McClanahan. The attorney returned a few days later to negotiate a settlement, but was unable at first to locate McClanahan, when he made inquiry for him. He was then told that McClanahan was in the penitentiary in North Carolina, where he had been for some time, and was advised that the man with whom he was dealing was a man by the name of Pierce McCarter, and an associate of McClanahan. This deception having been attempted upon the company, he declined to negotiate further, but interviewed McCarter as McCarter and not as McClanahan. McCarter told him that he and McClanahan had operated together and that he had purchased one or two cars as partner with McClanahan. He claimed an interest in or a right to the stolen car, and the right to make the settlement.

The company denied liability upon the ground of misrepresentation, false identity, and false swearing. A bill was then filed in the name of McClanahan alleging the issuance of the insurance policy to him, and its loss by theft, the proof of loss, the value of the car, and the right of the complainant to recover upon the policy exhibited to the bill. The bill was signed by counsel and not by the party; but in the meantime, on August 5, the convict had executed a power of attorney, authorizing the said McCarter to act for him and make the

settlement, and it is assumed that under this power 'of attorney he directed his counsel to file the original bill, as was done.

McClanahan returned from the penitentiary and took the stand - to make out his case. In making out the case alleged in the bill, his counsel asked him if he applied for the insurance, and he answered he did, stating that he owned the car, describing it, and answering other questions asked him as if he had acted in person. To foreclose the matter his counsel asked him if he signed the application in person, and he stated that he did. Counsel had made out the prima facie case as alleged in the bill, and he turned the witness over to opposing counsel.

Defendant's counsel was not deceived and turned immediately to his statement that he had signed in person his name to the application; when the witness discovered that the deception could be carried no further he admitted that he had not signed his name, but that McCarter had taken out the insurance for him, and had used his name in the application and in the proof of loss. Had the witness' attorney known the facts he would have made out a case of agency in the bill and would have attempted to prove it; that is, if he had known the position later taken by the complainant, for if he had known the real facts he would not have brought the bill. It is, therefore, seen that the complainant deceived his own attorney, he deceived the agent who wrote the insurance, he deceived the attorney who attempted to make the adjustment, and he did this through his associate, Pierce McCarter. If he did not, then McCarter deceived these parties and was using McClanahan as a tool to accomplish the ultimate results of the deception.

The company's agent thought he was dealing and contracting in person with the complainant McClanahan, and he had no intimation that he was dealing with McClanahan's agent, or that McCarter was signing any but his own name to the application for the insurance.

■ "There is no agreement where one party enters into the contract under a mistake as to the identity of the other party as where the party contracted with has falsely represented himself to be another. . . ." Contracts, 13 C. J., 378.

■ "Everyone has a right to select and determine with whom he will contract, and cannot have another person thrust upon him without his consent." Arkansas Valley Smelting Co. v. Belden Co., 127 U. S., 379, 8 S. Ct., 1308, 1309, 32 L. Ed., 246.

■■ A person who deals with another as agent of an undisclosed principal cannot set up the contract in his own name when it is discovered that he was not the agent of an undisclosed principal. There was no meeting of the minds. Winchester v. Howard, 97 Mass., 303, 93 Am. Dec., 93. Upon these well-established principles, in this case, if it can be said that the parties acted innocently, there was no

meeting of the minds, for the lack of identity of the parties to the contract.

And the complainant was guilty of false swearing upon the witness stand. He cannot be excused because of his illiteracy and ignorance, for he may be illiterate, but he is not ignorant. He has been what appears to be a successful bootlegger and transporter, and this class of illiterate mountain men are never ignorant. The policy contains a provision protecting the company against false swearing, and it should have application here.

The decree of the lower court is reversed, and the case dismissed, with costs.