435 P.2d 364

**OCCIDENTAL FIRE AND CASUALTY COMPANY, a corp., Plaintiff-Appellant,**

v.

**Lloyd COOK, Robert Cook and Desmond Smith, Defendants-Respondents.**

**No. 9934.**

Supreme Court of Idaho.

Dec. 20, 1967.

Jerry V. Smith, Lewiston, for appellant.

D. K. Worden, Jr., Lewiston, Robert W. Peterson, Moscow, John H. Maynard, Lewiston, for respondents.

SMITH, Justice.

Appellant, hereinafter sometimes referred to as the Company, initiated this declaratory judgment action. The main issue was whether the Company owes a duty to respondent Robert Cook, as alleged tortfeasor in a two-car collision with respondent Desmond Smith, to defend against Smith's personal injury action by virtue of a commercial combination automobile policy issued by the Company to Lloyd Cook, insuring the motor vehicle, a Diamond T truck, driven by Robert Cook. The trial court adjudged the issue against the Company, holding that the insurance policy extended coverage to the Diamond T truck. The detailed facts and issues are hereinafter set forth.

Respondents Lloyd Cook and Robert Cook are brothers. Lloyd Cook, an independent logger, owned several logging trucks and occasionally hired others in the performance of various logging jobs. Robert Cook and other Cook brothers had worked as employees and drivers for Lloyd for two to three years previous to the accident.

In January 1964, Lloyd Cook, having decided to get rid of the truck that Robert had been driving, purchased a 1951 Diamond T truck. Lloyd and Robert both signed the contract as co-purchasers. Lloyd made the down payment by paying $1,000 and trading in a truck that he owned. The two brothers took title to the truck in both their names. A loosely defined arrangement existed between them, whereby, if Robert would repay Lloyd for the money invested in the truck and would make the balance of the contract payments, the truck would belong to Robert. Subsequent to the acquisition of the truck, Robert continued to drive for Lloyd, and no change in their employment relationship occurred.

In April 1964, Lloyd Cook obtained insurance on his trucks from appellant Company, and included the Diamond T in the schedule of insured vehicles. He made no disclosure to the insurance agent of Robert Cook's interest in the truck, nor of the arrangement between them. In June 1964, Robert gave the insurance agent a "couple hundred dollars anyway" in partial payment of the insurance fee, and in December 1964, Robert paid Lloyd $1,000 as a down payment on the truck. Such payments, plus a series of payments of undetermined amount on the purchase price, constituted Robert's whole financial interest in the truck. Lloyd took the insurance solely in his own name.

November 9, 1964, Robert Cook, while driving the Diamond T truck in Lewiston, Idaho, had a collision with Desmond Smith, who thereby sustained injuries. Smith brought an action against Robert, who in turn made a demand upon appellant Company to defend the action and assume responsibility under the terms of Lloyd Cook's insurance policy. At the time of the accident Robert was driving within the scope of his employment for Lloyd, to pick up a load of logs.

Appellant, through its investigation of the accident, discovered the financial arrangement between Lloyd and Robert Cook concerning ownership of the truck. Appellant thereupon commenced this declaratory judgment action seeking determination of the issue whether its policy affords any in-

surance coverage to either Lloyd or Robert Cook in view of the undisclosed sharing of ownership relationship, and thus whether under the policy, it owed any duty to Robert to defend Smith's action directed against Robert.

The trial court determined (1) that respondent Lloyd Cook owned the truck "subject to an uncertain and indefinite agreement of sale to Robert Cook"; (2) that the insurance policy extended liability coverage to the truck; (3) that at the time of the accident respondent Robert Cook was operating the truck "in the logging operations of Lloyd Cook"; and (4) that respondent is entitled to recover attorneys' fees by virtue of terms of the contract of insurance.

The court thereupon entered a declaratory judgment adjudging that the policy extended liability coverage to the truck as of November 9, 1964, the date of the accident; that respondent Robert Cook at the time of the accident was operating the truck in the logging operations of respondent Lloyd Cook; also for $300 attorneys' fees in favor of respondent Lloyd Cook by virtue of the terms of the contract of insurance.

Appellant Company has appealed from the judgment. The issues presented by appellant's assignments of error are whether the trial court erred (1) in concluding that respondent Lloyd Cook was the sole owner of the Diamond T truck; (2) in concluding that the policy of insurance extended coverage to the truck, and (3) in awarding attorneys' fees to Lloyd Cook under the terms of the insuring agreement, for defending against the Company's declaratory judgment action.

Section II (e) of the insurance contract between the Company and respondent Lloyd Cook, under the heading of "Insuring Agreements," reads:

"As regards the insurance afforded by the other terms of the policy under coverages A [bodily injury liability] and B [property damage liability] the company shall:

"(e) reimburse the insured for all reasonable expenses, other than loss of earnings, incurred at the company's request."

Appellant contends that Robert Cook's undisclosed interest in the truck should operate to void the insurance policy in respect to the truck under Item 7(a) of the policy declarations, which reads:

"Except with respect to bailment lease, conditional sale, purchase agreement, mortgage or other encumbrances, the named insured is the sole owner of the automobile; * * *"

Appellant maintains the evidence shows that Robert purchased the truck for himself and that his brother Lloyd only loaned the use of his name in order to enable Robert to obtain credit upon the purchase price.

■ A false representation material to the risk of a policy of automobile liability insurance is sufficient to avoid the policy. Didlake v. Standard Ins. Co., 195 F.2d 247, 33 A.L.R.2d 941 (10th Cir. 1952); Hawkeye Casualty Company v. Western Underwriter's Ass'n., 53 F.Supp. 256 (D.C.Idaho 1944); 7 Am.Jur.2d sec. 19, p. 317. See I. C. § 41–1811.

■ An insurer has the right to choose the persons with whom he will contract, and he should not, retroactively be made to accept a relationship for which he did not knowingly bargain. Arkansas Valley Smelting Co. v. Belden Min. Co., 127 U.S. 379, 387, 8 S.Ct. 1308, 1309, 32 L.Ed. 246, 248 (1888); McClanahan v. State Auto. Mut. Ins. Co., 21 Tenn.App. 249, 108 S.W. 2d 1102, 1104 (1937); Kelly Contracting Co. v. State Auto. Mut. Ins. Co., 240 S.W. 2d 60 (Ky.1951).

■ The Court cannot create a new liability not assumed by the insurer, nor make a new contract for the parties. Miller v. World Insurance Company, 76 Idaho 355, 283 P.2d 581, 582 (1955); Thomas v. Farm Bureau Mutual Ins. Co. of Idaho, Inc., 82 Idaho 314, 353 P.2d 776, 779 (1960); Hawkeye Casualty Company v. Western

Underwriter's Ass'n., supra. However, neither can we ignore the facts surrounding the ownership of the truck in question. The trial court held "That some arrangement had been made between Robert Cook and Lloyd Cook whereby Robert Cook was given the right to purchase said truck from Lloyd Cook." Robert Cook, in his deposition, testified:

"Q What arrangement did you have with your brother to pay him for that [the truck]?

"A Didn't have any.

"Q Well, did you ever intend to pay him for that?

"A Well, eventually. * * *.

"Q It wasn't a gift to you, was it?

"A Well, no.

"Q In other words, you expected to pay him * * *.

"A Yes."

Lloyd Cook's deposition demonstrated a similar, ill-defined ownership relationship:

"Q Then you do own three rigs now?

"A Yes, me and my—I own one principally by myself and I financed, you might say, the other two for two of my brothers. They are mine until they are paid for.

"Q Oh, you have financed them for your brothers?

"A Uh-huh."

and further:

"A Well, I own them all but they are—it's—they are mine until they are paid for, you might say, and then they are going to be theirs.

"Q Then * * * by theirs, you say belong to your brothers, is that right?

"A They belong to me until they are paid for the same as—"

* * * * * *

"Q What is your verbal agreement with your brothers?

"A When the truck is paid for, it is his. Until this day it is mine. If he don't make the payments, I will."

■ Although the Diamond T truck was registered in the names of both brothers and certain payments had been made by Robert, both the truck and the insurance on the truck were sold with the understanding that Lloyd was owner of the truck. Robert Cook's occasional payments of the insurance premiums and purchase installments were construed by both the insurance agent and Lloyd Cook as a form of loan. The loosely defined conditional sale-purchase agreement between the brothers was nebulous, although it demonstrated Robert's prospective interest in the truck. There was, however, insufficient evidence to show Robert's sole or joint ownership of the truck.

■ The understanding between Robert and Lloyd indicating a qualified ownership, or conditional sales relationship, falls within the exceptions listed in Item 7(a), supra, of the declarations of the insurance contract, referring to Lloyd Cook's sole ownership agreement. Viewing the understanding under which the truck was purchased, the insurance contract, and the arrangement between the brothers, the evidence is sufficient to support the finding that Lloyd Cook was sole owner of the Diamond T truck, subject to an arrangement "whereby Robert Cook was given the right to purchase said truck," although "the exact terms of the arrangement were not disclosed by the evidence." Robert Cook's lack of ownership in the truck being thus defined, the matter of false representation under the insurance policy does not arise.

■ The insurance policy, Section III, under "insuring agreements," reads:

"*Definition of Insured:* With respect to the insurance for bodily injury liability and for property damage liability, the unqualified word 'insured' includes the named insured and also includes any person while using the automobile pro-

vided the actual use of the automobile is by the named insured or with his permission, and used for the purposes stated and subject to the limitations in Item 6 of the declarations."

Such policy limitations do not apply to Robert Cook but to Lloyd Cook as regards his business and personal uses of the insured motor vehicles. It thus follows that Robert Cook, as Lloyd's employed truck driver at the time of the accident, was as fully protected for bodily injury and property damage liability as was Lloyd Cook since he, Robert, was acting within the scope of Item 6 (transportation of logs) of the policy at the time of the accident. The insurance policy was effective and in force at that time and it extended coverage to the Diamond T truck.

Appellant contends that the trial court erred in awarding attorneys' fees to Lloyd Cook under the terms of the insuring agreement. Section II (e) of the "Insuring Agreements" contained in the insurance contract, reads:

"The company shall—reimburse the insured for all reasonable expenses, other than loss of earnings incurred at the company's request."

The fact that this is a declaratory judgment action should have no effect on the award of "reasonable expenses" to the insured. Lloyd's rights are being determined in this cause and he is required to defend. Appellant Company cannot avoid its responsibility under Section II (e) of the insuring agreements, on the ground that the action is for declaratory judgment relief, when the effect upon the insured is as burdensome in its consequences as any other type of legal action. Standard Accident Ins. Co. of Detroit v. Hull, 91 F.Supp. 65, 68 (S.D.Cal.1950), a declaratory judgment action; see also Coast Lumber Co. v. Aetna Life Ins. Co., 22 Idaho 264, 125 P. 185 (1912).

Judgment affirmed. Costs to respondents.

TAYLOR, C. J., McQUADE and SPEAR, JJ., and NORRIS, D. J., concur.