**Al J. SCHECHTER, Plaintiff,**

v.

**William J. CARTER, et al., Defendants.**

**Al J. SCHECHTER, Plaintiff,**

v.

**William J. CARTER, et al., Defendants.**

**Nos. 83 CIV 4267 (LBS), 83 CIV 4783 (LBS).**

United States District Court, S.D. New York.

March 2, 1984.

Schekter Aber Rishty & Goldstein, P.C., New York City, for plaintiff; Stanley L. Kantor, New York City, of counsel.

Hofheimer Gartlir Gottlieb & Gross, New York City, for defendants; Sylvia D. Garland, New York City, of counsel.

## OPINION

SAND, District Judge.

These actions, in which this Court's jurisdiction is based upon the diversity of citizenship of the parties, involve the disputed construction of a provision in two leases executed in June 1962. The complaint in 83 Civ. 4267 relates to the premises at 237–239 East 58th Street, New York, New York. The complaint in 83 Civ. 4783 relates to the premises 343–345 East 51st Street, New York, New York. Both premises are apartment buildings. In all respects relevant to this controversy, the leases are identical. At the time of execution of these leases, two other leases for individual apartments were executed. All four leases contain a provision relating to "Rent increases Based on Consumer Price Index", a copy of which is annexed hereto as Appendix A, except that the individual apartment leases do not deal with renewal terms.

The two premise leases were executed as part of a sale-lease back transaction pursuant to which defendants acquired the premises subject to the leases which had been entered into between the plaintiff-seller and his wife, and plaintiff leased back the premises. The apartment leases were between plaintiff as landlord, and William Carter and John Carter (now deceased), two of the defendants, as tenants.

For twenty years, no dispute arose as to the construction of the consumer price index provision. In 1983, plaintiff negotiated for the sale of his interest in the 58th Street property. The prospective purchaser refused to buy the property because of another provision in the lease to which the premises were subject. The initial term of the lease was from 6/1/61 to 5/31/92. The tenant had three options to renew for terms of 23 years each. The provision which dissuaded the prospective buyer related to the rental payable during the three 23 year renewal terms. It reads:

Renewal Terms—Fixation of Rents

24. Whenever it is provided herein that the Tenant shall pay a net annual rent during the renewal terms, said net annual rent shall be a sum equivalent to six (6%) per cent of the fair market value of the demised land plus six (6%) per cent of the value of the building thereon less depreciation thereof at the rate of two (2%) per cent per annum, computed from the date of the commencement of this lease plus six (6%) per cent of the cost of any substantial alteration as defined in Article 7, less depreciation thereof at the rate of two (2%) per cent per annum computed from the date of the completion thereof; except that if the present building has been replaced, then such depreciation shall be computed on the cost of the new building from the date of the completion of such new building. For the purposes of the computation of depreciation it is agreed that the fair market value of the existing building as of the date hereof is $125,000 [in lease for 237–239 East 58th Street; $150,000 in lease for 343–345 East 51st Street], but if a new building has replaced the same, the cost of such new building as established by Tenant to Landlord's satisfaction shall be the fair market value of such new building. Said fair market value of the land and building shall be ascertained as of a date six (6) months prior to the date on which each newly fixed rental is to become effective hereunder.

Plaintiff urges that this provision would enable defendants to "reap a double inflationary benefit—the first time when the net annual rent is adjusted, which, in accordance with the reappraisal of the properties, will undoubtedly reflect the inflationary increase in the value of real property in this City, and the second time, if plaintiff's construction is not accepted, when reappraised price is multiplied by the percentage increase in the Consumer Price Index from *May, 1962* to the beginning of each five year period of each renewal term." Affidavit of Stanley L. Kantor, Esq., pp. 8–9.

The frustrated sale of the plaintiff's interest in the 58th Street premises allegedly caused plaintiff to reexamine the leases and caused him to conclude that the uniform and consistent interpretation of the consumer price index over the preceding twenty years had been erroneous. Thus, although the inquiry was precipitated by plaintiff's distress at the impact of the renewal term rental, which commences in 1992, this action is directed not at the renewal rent provision but at the consumer price index provision quoted above. The complaint seeks no relief vis-a-vis the renewal rent provision.

■ The parties have construed the consumer price index provision to provide for an increment in the annual rent payable in each of the next five years. Plaintiff now asserts that the correct interpretation of the provision is to provide for a single increment equal to the product of the net annual rent for the initial five years multiplied by the percentage of increase in the consumer price index, which single increment is to be paid over the five years. Under plaintiff's interpretation, in each year, the landlord would receive only ⅕th of the increase reflected by the consumer price index rather than the entire increase annually.

Defendants move for summary judgment and the motion is granted.

Plaintiff's interpretation of the lease borders on the frivolous. Although it cannot be gainsaid that the consumer price rent increase provision is inartfully drafted and that the term "net annual rent" used elsewhere in the lease is not employed in this provision, the Court is not compelled to abandon common sense for the sake of literalism.

The parties to this transaction were experienced real estate entrepreneurs. The purpose of a price escalation provision is, of course, to equate future dollars to the real value, measured in terms of purchasing power, of the dollar at the time of the agreement. Plaintiff's interpretation would be inconsistent with this purpose. If we look solely to the four corners of the lease in the light of the obvious intent of the parties, we would conclude that the motion should be granted. If the clause was intended to provide for only a ⅕th cost of living increment each year, specific language to that effect, negating the usual construction of such clauses, would be expected. If we look beyond the four corners of the lease this conclusion is significantly reinforced. For twenty years, these experienced real estate parties construed four leases in a uniform fashion. Plaintiff who was defendants' landlord with respect to the apartment leases, utilized the same construction of the provision as was utilized with respect to him as a lessee. When the parties modified the escalation provision in 1977, they explicitly referred to the provision as relating to increases in net annual rent. Plaintiff's claim that he should not be bound by this language because his wife was then extremely ill arouses compassion but is not of legal significance.

Plaintiff's frustration at the decreased marketability of the property because of another provision, unchallenged here, which goes into effect in 1992, cannot serve as the excuse to adopt a strained, economically unrealistic interpretation of a clause the true intent of which has been well known to the parties for over 20 years.

### Defendants' Entitlement to Counsel Fees

Defendants seek an award of attorneys' fees for their defense of the action. They claim such award pursuant to Article 40, which provides:

Legal Expenses

If the Landlord shall necessarily incur or become liable for any reasonable legal fees or expenses to secure compliance by the Tenant with any of the terms, covenants, conditions and agreements of this lease, or to recover any damages for breach thereof, the Tenant shall pay said reasonable legal fees and expenses, and the same shall be additional rent.

Defendants contend that attorneys' fees should be awarded pursuant to this Article because their burden in defending plain-

tiff's proposed construction of Article "1"(b) was

> "... as crucial and critical as it would [have been] if plaintiff had stopped paying the full amount of the rent prescribed by Article "1" (b) and thus [they] were compelled to bring an action to enforce their construction of that Article."

Def.Mem. p. 3. Had defendants not contested plaintiff's declaratory judgment proceeding, defendants would have been barred from challenging plaintiff's construction of the lease and consequently, plaintiff's monthly tender of rent thereafter, pursuant to the plaintiff's interpretation, would be neither a "default" in conventional terms nor a "breach" under the terms of the lease.

As a federal court sitting in diversity and pursuant to Article 39(a)[1] of the Lease, we are constrained to apply New York law in our interpretation of the disputed clause.

■ A provision in a lease requiring a tenant to pay his landlord for the legal fees and disbursements incurred in an action to enforce the payment of rent has long been judicially recognized as consistent with the public policy of New York state. *379 Madison Avenue, Inc. v. Stuyvesant Co.*, 242 A.D. 567, 275 N.Y.S. 953, *aff'd* 268 N.Y. 576, 198 N.E. 412 (1935); J. Rasch, *Landlord and Tenant, Summary Proceedings*, § 358 (2d Ed.1971) p. 449. The issue of whether attorneys' fees are recoverable for defense of a declaratory judgment action under a lease provision such as Article 40 appears to be a matter of first impression in the State of New York.

Pursuant to Article 40, the only conditions precedent to the landlord's right of recovery of legal fees and expenses are either an actual breach or action on the landlord's part "... necessary ... to secure compliance by the tenant with any of the terms, covenants, conditions and agreements of the lease...." Significantly, the term "default" appears nowhere in the disputed Articles. The language utilized is indicative of an intent not to have a default serve as the condition precedent for recovery of legal fees and expenses.

■ The right to recover expenses is contractual in nature, and the lease which serves as the entire contract must be construed to determine the latitude and scope of such contractual right. *Village Leasing Corp. v. Arnold, infra*, p. 1530, 58 Misc.2d at 959, 296 N.Y.S.2d at 895.

An examination into other provisions of a lease to interpret an attorneys' fees provision was conducted in *Frank B. Hall & Co. of New York, Inc. v. Orient Overseas Associates*, 84 A.D.2d 338, 446 N.Y.S.2d 59 (1st Dept.), *aff'd*, 56 N.Y.2d 965, 453 N.Y. S.2d 680, 439 N.E.2d 395 (1982). The pertinent lease provisions in *Hall* provided:

> 17. * * * (2) * * * [I]f tenant shall make default in the payment of the rent reserved herein or any item of additional rent herein mentioned or any part of either or in making any other payment herein required * * * then and in any of such events Landlord may without notice, re-enter the demised premises * * * and dispossess Tenant by summary proceedings or otherwise * * *.
>
> 18. In case of any such default, re-entry, expiration and/or dispossess by summary proceedings or otherwise, (a) the rent shall become due thereupon and be paid up to the time of such re-entry, dispossess and/or expiration together with such expenses as landlord may incur for legal expenses, attorneys' fees, brokerage and/or putting the demised premises in good order * * * (b) Landlord may re-let the premises or any part or parts thereof.

As the Appellate Division, First Department held in that case,

> The clear import of these two provisions, when considered together, is that they cannot and do not serve as a contractual predicate for the recovery of attorneys'

---

**1.** Article 39(a) of the Lease provides:
Laws of the State of N.Y. Govern

This agreement shall be governed by and construed in accordance with the laws of the State of New York.

fees incurred in defense of a prior action for a declaratory judgment. *Carl Ally, Inc. v. Mahoney, Cohen & Co.*, 47 A.D.2d 874, [366 N.Y.S.2d 430]. These paragraphs would, however, operate as a basis for recovery of attorneys' fees in a situation, not present here, where the landlord has undertaken some action, either by summary proceeding or otherwise, to re-enter the demised premises or to dispossess the tenant. Since the landlord must engage in some affirmative action prior to these provisions being activated, and since the defense of a declaratory judgment is not that type of action contemplated which will trigger these provisions, the claim for attorneys' fees under paragraph 17 and 18 is ill founded. *Hall*, 84 A.D.2d 338 at 342, 446 N.Y.S.2d 59.

The *Hall* court read two provisions of the lease together and held that in order to recover attorneys' fees, the landlord had to have undertaken some enumerated affirmative action (either by summary proceeding or otherwise, to re-enter the demised premises or to dispossess the tenant). Since there, a declaratory judgment proceeding was not among the enumerated legal actions, the defense of that action by the landlord did not trigger the attorneys' fee provision.

The instant case, however, is distinguishable. Although defendants would read Article 20(a) [2] in conjunction with Article 40, to limit the award of attorneys' fees to situations where the Tenant is in breach (Def.Mem. p. 8), we conclude otherwise.

■ The declaratory judgment action instituted by plaintiff to judicially re-construe the meaning of the escalation clause plainly is a legal action which is encompassed by the omnibus clause which appears at the end of Article 20(a). Thus, Article 40 is triggered, entitling defendants to an award of reasonable attorneys' fees.

We further distinguish *Hall*, and other cases cited by plaintiff, as situations where the leases in question predicated the entitlement to attorneys' fees upon a "default" or "breach." *Sayers v. 510 Park Avenue Corp.*, 49 A.D.2d 818, 373 N.Y.S.2d 150, *reh'g denied*, 38 N.Y.2d 707, 382 N.Y.S.2d 1026, 345 N.E.2d 603 (1975); *Village Leasing Corp. v. Arnold*, 58 Misc.2d 958, 296 N.Y.S.2d 894 (N.Y.City Civ.Ct.1969); *Columbia Corrugated Container Corp. v. Skyway Container Corp.*, 37 A.D.2d 845, 326 N.Y.S.2d 208 (2d Dept.1971), *aff'd*, 32 N.Y.2d 818, 345 N.Y.S.2d 1012, 299 N.E.2d 257 (1973) (dicta in Appellate Division decision to the effect that lessor had, at one time, the right to demand and recover reasonable attorneys' fees interpreted to be predicated upon lessee's default at the time of its declaratory judgment action).

A very similar fact pattern to the one in this case was presented to the Missouri Court of Appeals in *Conservative Federal Savings & Loan Association v. Warnecke*, 324 S.W.2d 471 (Mo.App.1959). In that case, plaintiff-appellee was a lessee in a commercial building in St. Louis. It brought a declaratory action seeking to establish that a claimed increase under an escalator clause in the rental provisions of its lease was ineffective for want of timely notice to it of defendant's claim to the rent increase. The appellant urged, *inter alia*, upon appeal, that it should have been awarded reasonable attorneys' fees pursuant to a clause in the lease which read:

> "The lessee agrees to pay all reasonable attorney's fees and all other expenses of the lessor incurred in enforcing any of the obligations of the lessee under this lease, or in any litigation or negotiations in which the lessor shall, without lessor's fault, become involved through or on account of this lease."

The court held that, under such provision, it was proper to award the lessor's attor-

---

**2.** Article 20(a) provides that:

Injunction

"In the event of a breach or a threatened breach by either party of any of the agreements terms, covenants or conditions hereof, either party shall have the right of injunction to restrain the same *and the right to invoke any remedy allowed by law or in equity, as if specific remedies were not here provided.*" (emphasis supplied).

ney for his services in defending the lessee's action to interpret the lease and declare ineffective the claimed increase in rental under the escalator clause.

Insight as to when the awarding of attorneys' fees is proper can be gained from an examination of instances when an insured has a right to recover attorneys' fees from his insurer. In the absence of a pertinent statute or contractual provision, the New York courts have held that an insured's attorneys' fees may only be recovered if he was *defending* the declaratory judgment action brought by the insurer to determine the existence of coverage under a liability policy, and not when the insured instigated such an action. *See Sucrest Corp. v. Fisher Governor Co.*, 83 Misc.2d 394, 371 N.Y. S.2d 927 (1975), *Brown v. United States Fidelity & Guaranty Co.*, 46 A.D.2d 97, 361 N.Y.S.2d 232 (1974).

Furthermore, case law exists which has interpreted insurance agreement provisions which provide for the insurance company to reimburse the insured for all reasonable expenses, other than loss of earnings, incurred at the company's request. While authority to the contrary does exist, several cases have interpreted such a provision to warrant the award of attorneys' fees incurred in defending an insured's declaratory judgment action to determine the existence of coverage under a liability policy. *See Occidental Fire & Casualty Co. v. Cook*, 92 Idaho 7, 435 P.2d 364, 368 (1967); the court noted that the insurer could not avoid its responsibility under the insuring agreements, on the ground that the action was for declaratory judgment relief, when the effect upon the insured was as burdensome in its consequences as any other type of legal action. *Upland Mutual Insurance Incorporated v. Noel*, 214 Kan. 145, 519 P.2d 737 (1974); *Connecticut Fire Ins. Co. v. Reliance Ins. Co.*, 208 F.Supp. 20 (D.C.Kan.1962), Annot. 87 ALR 3d 429.

### The Amount of the Fee Award

Defendants seek an award of $34,583.50 for legal fees and disbursements for the period commencing June 1983 through January 1984. The legal fees are based upon the expenditure by Sylvia D. Garland of 207.7 hours and her regular billing rate of $160 per hour. In her affidavit documenting this, she asserts that the time expended and hourly rate are fair and reasonable and reflect actual charges to the client in an action in which "plaintiff demanded a refund of $250,000 and an interpretation of the rent escalation clause that would deprive the defendants of rent running potentially into millions of dollars." Affidavit ¶ 11.

Plaintiff asserts that duplicative time was involved, that certain routine work was performed at too high a level in the defendants' firm hierarchy and that defendants seek fees for time incurred to collect fees, not compensable under New York law. *Parkside Memorial Chapels, Inc. v. Garlick Funeral Homes, Inc.*, 61 A.D.2d 1028, 403 N.Y.S.2d 95 (2d Dept.1978). We disagree with all but the last contention and deduct the 25 hours expended in January, 1984 which would have been primarily devoted to the fee issue. The rate charged is reasonable and the services were commensurable with the magnitude of the issue.

Plaintiff's request for an evidentiary hearing is denied as being inconsistent with federal practice. See *Marziliano v. Heckler*, 728 F.2d 151 at 158 (decided Feb. 17, 1984).

Thus, we award fees for 182.7 hours at $160 per hour ($29,232) and disbursements of $1,351.50.

Settle order.

### APPENDIX A

#### Rent Increases Based on Consumer Price Index

(b) The Consumer Price Index (formerly known as the "Cost of Living Index") published by the United States Bureau of Labor Statistics, was 105.7 for the month of May, 1962, for the City of New York, based on the 1957–1959 Consumer Price Index. For the purpose of determining the increases of rent hereunder, said month and year

shall be deemed to be the base period and said index figure shall be deemed to be the base index figure. If a revised or other official price index or indexes is published in lieu of the present index, the base index figure shall be adjusted to give effect to the difference between the index figure of the Consumer Price Index now in effect and the index figure of the revised or substitute price index, so that the percentage of periodic increase of rent under the provisions of this Article shall be no greater and no less than if it had been computed on the base index figure of the present price index. In the event that the United States Bureau of Labor Statistics discontinues the publication of the present price index, the index to be used in computing rent adjustments hereunder provided shall be such index or computation as may be published by any other United States Government Bureau or Department to replace said Consumer Price Index.

At the end of each five-year period of the term of this Lease, if there has been an increase in the cost of living for New York City as shown by the last previous published monthly figures of the then existing Consumer Price Index, the Tenant agrees to pay to the Landlord as increased rent during the five-year period of such Lease next ensuing (or such shorter period as may then remain until the expiration of the then current term of the Lease) a sum equal to the percentage of increase of the Consumer Price Index over the base index figure. Such additional rent shall be computed on the net annual rent reserved by Article 1 of this Lease during the initial term thereof, or on the net annual rent determined as provided in Article 24 of this Lease during any renewal term thereof, multiplied by the percentage increase in the cost of living as shown by such Consumer Price Index or by any other index substituted in lieu thereof by the United States Government.

If, at the end of any five-year period, such Consumer Price Index shows that there has been a reduction in the cost of living, then for five (5) years next ensuing the additional rent shall be reduced to reflect the percentage of decrease in the cost of living, such reduction to be computed on the net annual rental then in effect. The parties covenant and agree, however, that, regardless of any decrease in the cost of living as shown by such index or indexes, the net annual rental to be paid by Tenant to Landlord, exclusive of the additional rents provided in other articles of this Lease, shall be not less than the amount reserved by Article 1 during the initial term of this Lease and not less than the amount determined as provided in Article 24 during any renewal term thereof.

The parties covenant and agree that any increase or decrease of rent as by this subdivision "b" provided, shall become effective on the first day of the month following the end of each five-year term.

In any action or proceeding wherein the amount of such rent increase shall be in issue, the then official price index shall be conclusive on the parties hereto.

Rent increase, as used under this subdivision "b" shall not be deemed or defined as "additional rent" as said term is employed in other articles of this Lease.